## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GEORGE BORBAS,            :     MOTION TO VACATE
     Movant,             :     28 U.S.C. § 2255
                                :
     v.                       :     CRIMINAL INDICTMENT NO.
                                :     1:13-CR-0025-SCJ-JFK-6
UNITED STATES OF AMERICA,    :
     Respondent.         :     CIVIL FILE NO.
                                :     1:16-CV-4782-SCJ-JFK

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Movant, George Borbas, seeks via 28 U.S.C. § 2255 to challenge the constitutionality of his conviction and sentence entered in this Court under the above criminal docket number. The matter is before the Court on the motion to vacate [308], Respondent's response [328], Movant's amended reply [347],[1] Movant's post-hearing brief [386], Respondent's post-hearing response in opposition [389], and Movant's post-hearing reply [390]. For the reasons discussed below, Movant's motion to vacate and a certificate of appealability (COA) are due to be denied.

---

[1]The Court allowed Movant to amend his reply and advised him that his amended reply would replace his initial reply. (Order of Sept. 7, 2017, at 2, ECF No. 342).

## I.   <u>Background</u>

The grand jury for the Northern District of Georgia indicted Movant for conspiracy to distribute controlled substances, through Premier Medical Management Inc., Premier Pain Management Inc., and Premier Pain Management and Physical Therapy (PMMI), for no legitimate medical purpose. (First Superseding Indictment, ECF No. 133). Represented by Michael Trost, Movant pleaded guilty. (Guilty Plea and Plea Agreement, ECF No. 229-1; Plea Hr'g Tr., ECF No. 323). Movant received a total seventy-month term of imprisonment. (J., ECF No. 265). The record does not show that Movant appealed.

Movant, *pro se*, filed the instant motion to vacate, in which he raises the following grounds for relief:  (1) Trost was ineffective at sentencing for failing to argue for a mitigating role decrease under U.S.S.G. § 3B1.2; (2) Trost was ineffective (a) for refusing to file a notice of appeal, (b) in regard to the presentence investigation report (PSR, sometimes referred to as PSI), and (c) in regard to drug quantity; and (3) his sentence is illegal. (Mot. to Vacate at 5, 8 and Mem. in Support of Mot. to Vacate at 2, ECF No. 308).

The Court held a hearing as to Movant's grounds that counsel was ineffective for failing to argue for a mitigating role decrease and for refusing to file a notice of

2

appeal.  (Mot. to Vacate Hr'g Tr., ECF No. 380).  The parties have submitted their post-hearing briefing, and the matter is now ready for disposition.  (Mov't Post-Hr'g Br., ECF No. 386; Resp't Post-Hr'g Resp., ECF No. 389; Mov't Post-Hr'g Reply, ECF No. 390).[2]

## II.    28 U.S.C. § 2255 Standard

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United

---

[2]Movant, through counsel appointed for the hearing, listed the grounds for relief as follows:  ineffective assistance of counsel for (1) failure to file a notice of appeal, (2) failure to be present during the presentence interview, (3) failure to argue for a reduction for a mitigating role, (4) failure to enforce an immunity agreement (Movant raised this claim in conjunction with his claim that his sentence is illegal because he did not receive a reduction based on substantial assistance), (5) failure to object to drug quantity, (6) failure to explain the contents of a plea agreement (based on Movant's citation, he appears to refer to the plea agreement in regard to drug amount), (7) failure to properly argue acceptance of responsibility, (8) failure to object to errors in the presentence report, and (9) failure to argue for a sentence reduction pursuant to U.S.S.G. § 5K1.1, (Mot. to Expand Scope of Hr'g at 2-3, ECF No. 366), and (10) an illegal sentence because Movant did not receive full credit for acceptance of responsibility or a reduction for substantial assistance, (Mov't Post Hr'g Br. at 5).  To the extent the list refers to matters in Movant's initial reply, the Court previously granted Movant's motion to file an amended reply and advised Movant that his amended reply would replace his initial reply.  (Order of Sept. 7, 2017, at 2).  Although the matters listed by counsel are generally addressed in the discussion of Movant's grounds for relief, Movant did not file a motion to amend, and the Court follows Movant's initial presentation of his grounds for relief.

States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255. Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted[.]"  United States v. Frady, 456 U.S. 152, 164 (1982).  The § 2255 movant bears the burden to establish his right to collateral relief.  Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015).

Accordingly, § 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice."  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted).  A constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts.  Massaro v. United States, 538 U.S. 500, 505-09 (2003).

III.   **Discussion**

A.   **Ground One – Ineffective Assistance of Counsel for Failing to Argue for a Mitigating Role Decrease Under U.S.S.G. § 3B1.2**

At Movant's plea hearing, the government's summary of the evidence against Movant included the following – (1) groups of patients from out of state came to the clinic and Movant was responsible for one of those groups, which included friends and family; (2) Movant agreed with one of the clinic co-owners to help find patients for the clinic; (3) Movant sometimes bribed clinic employees to have his group seen earlier; and (4) Movant, in exchange for helping with his group members' appointment costs, would receive a portion of their pills, which he sometimes sold in North Carolina. (Plea Hr'g Tr. at 26).  Movant agreed with the government's factual presentation.  (Id. at 27).

Movant's PSR states as follows –

[Movant] was a customer of PMMI from North Carolina who "sponsored" various other PMMI customers. [Movant] arranged to avoid paying for office visits at PMMI and to receive prescriptions for controlled substances issued by Dr. Williams to him and his recruited customers.  [Movant] then returned to North Carolina and distributed controlled substances derived from those PMMI prescriptions.

. . . A Confidential Source (CS) reported [Movant] frequently traveled to PMMI with four to five other individuals (all from North Carolina) and frequently did not have to pay for his office[] visits or the office visits of

5

the patients he recruited to PMMI.  The CS admitted to accepting bribes from [Movant] to be seen immediately by Dr. Williams.  The CS stated Dr. Williams often authored prescriptions for [Movant] and the other recruits without examining them.  There was evidence that [Movant] would sometimes sign for all the prescriptions of each of his recruits by forging their signatures.

. . .

Three of [Movant's] recruited PMMI patients (including his nephew) were interviewed and admitted that [Movant] paid for their trips to PMMI and MRI scans in exchange for most of their pills and that [Movant] resold the pills in North Carolina.

. . .

[Movant] was involved with the conspiracy from the beginning.  Based on the statements made by Larry Webman in his proffer, [Movant] was originally paid $50 per patient referral.  However, he was referring so many patients he could not keep up and began paying him $2,000, and then started treating [Movant's] employees and family members for free, as payment for patient referrals. . . .

(PSR ¶¶ 26, 30, 33, 62).  The PSR also stated that the government had not provided evidence that Movant had a supervisory position, and the PSR did not recommend any adjustment based on Movant's role in the offense (as either aggravating under U.S.S.G. § 3B1.1 or mitigating under U.S.S.G. § 3B1.2).  (Id. ¶ 69).

Movant argues in ground one that Trost at sentencing was ineffective for failing to argue for a decrease under § 3B1.2 for his mitigating role.  (Mem. in Support of

6

Mot. to Vacate at 2-4).  Movant appears to argue that he was only responsible for seven people that he brought to the clinic and thus was entitled to a mitigating role decrease.  (Id.).

Respondent argues that Movant's role in the offense, as the most productive clinic sponsor, did not qualify for a mitigating role decrease and that he fails to show that Trost was ineffective on the issue.  (Resp't Resp. at 19-20, ECF No. 328).  In reply Movant asserts that he brought only "7 participants" to the clinic once a month in return for a simple fee, as compared with Larry and Randy Webman who opened and operated the clinic, Dr. Williams who issued prescriptions, Dara Webman who managed the office, and Liz Gaten who posed as nurse and physicians's assistant. (Mov't Am. Reply at 6-7, 10-11, ECF No. 347).[3]

At the hearing on Movant's motion to vacate, Trost testified that the government was looking at a three-level role increase based on the number of persons that Movant sponsored and brought into the scheme but that he had been successful in convincing the government not to advocate for such increase and, in turn, agreed that the defense would not advocate a position on Movant's role.  (Mot. to Vacate Hr'g Tr. at 9-10).

---

[3]Movant also discusses the clarifying amendment to the commentary to § 3B1.2, which amendment occurred before Movant's sentencing.  (Mov't Am. Reply at 3-6.)

7

Trost testified that he explained to Movant that they were fortunate to avoid a role increase and that he recalled that Movant accepted that position.  (Id. at 11-12). Movant testified that on the morning of sentencing he was not happy with several matters in the PSR – "I told him that I wasn't happy with like eight or ten things in it. I wasn't happy that I didn't get a minor role" – and that he talked with Trost for approximately twenty minutes in regard to his objections.[4]  (Id. at 41, 46).

Under the Sixth Amendment, a defendant has the right to "reasonably effective" legal assistance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him.  Id. at 690-92; Bottoson v. Moore, 234 F.3d 526, 532 (11th Cir. 2000) (stating that court may resolve an ineffective assistance claim based on either prong). Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  "A strategic decision by defense counsel will be held to constitute ineffective assistance 'only if it was so patently unreasonable that

---

[4]Movant's testimony did not provide further detail on the objections he discussed with Trost during that twenty minutes.  Movant in his post-hearing brief provides no additional argument on ground one.  (See Mov't Post Hr'g Br.).

no competent attorney would have chosen it.'" <u>Kelly v. United States</u>, 820 F.2d 1173, 1176 (11th Cir. 1987) (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). "The reasonableness of a counsel's performance is an objective inquiry. . . . And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc).*

Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect on the outcome of the proceedings" does not show prejudice. <u>Wood v. Allen</u>, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting <u>Strickland</u>, 466 U.S. at 693) (internal quotation marks omitted).

Section 3B1.1 allows a three-level increase if a defendant "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive" and allows a two-level increase if

defendant was an organizer, leader, manager, or supervisor in the criminal activity

which does not involve five participants or is not otherwise extensive.  U.S.S.G.

§ 3B1.1(b), (c).

> Factors the court should consider include the exercise of decision making
> authority, the nature of participation in the commission of the offense, the
> recruitment of accomplices, the claimed right to a larger share of the
> fruits of the crime, the degree of participation in planning or organizing
> the offense, the nature and scope of the illegal activity, and the degree of
> control and authority exercised over others.

U.S.S.G. § 3B1.1, Application Note 4; see United States v. Gadd, 701 F. App'x 855,

860 (11th Cir. 2017) (finding that district court did not err in applying a three-level

increase for defendant who had brought in recruits to pain clinic in exchange for

commissions and occasional compensatory pills from the recruits themselves).

Section 3B1.2 allows a four-level decrease for a defendant who is a minimal

participant, a two-level decrease for a defendant who is a minor participant, and three-

level decrease for cases falling in between.  U.S.S.G. § 3B1.2.  A minor participant is

one "who is less culpable than that of most other participants in the criminal activity,

but whose role could not be described as minimal."  U.S.S.G. § 3B1.2, Application

Note 5.  The district court should "consider two principles: 1) the defendant's role

measured against the relevant conduct for which []he has been held accountable at

10

sentencing; and 2) [his] role as compared to other participants in that relevant conduct." United States v. Rodriguez, 751 F.3d 1244, 1258 (11th Cir. 2014). The sentencing court should consider –

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, Application Note 3(C). A defendant cannot qualify for both an aggravating and a mitigating role. Chalk v. United States, No. 113CR133HSMSKL2, 2018 WL 1124968, at *4 (E.D. Tenn. Mar. 1, 2018).

The Court credits Trost's testimony on his advocacy, which resulted in the government not pursuing an aggravating role enhancement and in Trost not pursuing a mitigating role decrease for Movant. Trost represented a client who had recruited at

11

least seven people, received payment for recruiting them, and paid for recruits' appointment costs in exchange for a portion of their pills, which he sometimes resold in North Carolina. In consideration of the circumstances, Movant fails to establish that no reasonable counsel would have taken the course that Trost did take or that Trost's advocacy was deficient. See Gadd, 701 F. App'x at 860.

**B.** **Ground Two (a) – Ineffective Assistance of Counsel for Refusing to File a Notice of Appeal When Requested**

In pleading guilty, Movant entered into an appeal waiver in which Movant expressly waived the right to appeal or collaterally attack his conviction and sentence, with exceptions for an upward departure from the sentencing guidelines range, claims of ineffective assistance of counsel, or a cross appeal in the event that the government appealed. (Guilty Plea and Plea Agreement at 17). At the plea hearing, Movant testified that he had read the plea agreement and gone over it with Trost. (Plea Hr'g Tr. at 3). The government reviewed the terms of the plea agreement, including the appeal waiver, and Movant stated that he agreed with the government's description of the plea agreement. (Id. at 14-15). Movant further testified that he was satisfied with Trost's representation. (Id. at 17). The following exchange in regard to the appeal waiver occurred between the Court and Movant –

12

Q.     Do you understand that under some circumstances you or the government may have a right to appeal any sentence that I may impose?

A.     Yes.

Q.     However, do you understand as part of your plea agreement you are giving up your right to appeal your sentence unless there is an upward departure from the guidelines, an appeal by the government, or a claim of ineffective assistance of counsel filed by you?

A.     Yes, I do.

Q.     Do you also understand you are giving up your right to collaterally attack your conviction and sentence in any post-conviction proceeding?

        Let me repeat it again if you need to talk to your attorney.

        Do you also understand you are giving up your right to collaterally attack your conviction and sentence in any post-conviction proceeding?

. . .

The witness: yes; yes, your honor.

. . .

Q.     Any questions about that?

A.     No, sir.

(Id. at 20-21).  On May 14, 2015, the Court accepted Movant's guilty plea.  (Id. at 28).

On October 28, 2015, while on release before sentencing, Movant was arrested and charged in North Carolina.  (PSR ¶ 80).  On November 12, 2015, Movant was

arrested for violating the conditions of his bond by violating the law in North Carolina. (PSR ¶ 11; Pet. and Order, ECF No. 253; Arrest Warrant, ECF No. 260).  Movant's draft PSR is dated as prepared on November 13, 2015, by Barbara L. Oswald.  (PSR at 1).  As indicated in a letter dated November 19, 2015, Trost sent a copy of that PSR to Movant at a jail in Virginia and stated, "I am told that you will not be moved back to Atlanta for another week or so.  If possible, notify me when you arrive.  In the meantime, if you want, write me with any comments or corrections regarding the PSR."  (Mov't Ex. 2, ECF No. 377-2).  On November 24, 2015, Trost submitted objections to the PSR, noted that he was unable to consult with Movant as he was confined out of state, and reserved the right to supplement the objections upon consultation with Movant when he returned to the Northern District of Georgia. (PSR, Letter dated Nov. 24, 2015, n.1).  On December 3, 2015, Trost moved to continue sentencing as he was in trial and wanted an opportunity to review the PSR with Movant, which motion the Court granted.  (Unopposed Mot. to Continue Sentencing, ECF No. 255).  As indicated in a letter dated December 4, 2015, Trost sent Movant a copy of the final PSR at the U.S. Penitentiary in Atlanta.  (Mov't Ex. 3, ECF No. 377-3).

14

At his December 29, 2015, sentencing, Movant informed the Court that he had reviewed the PSR with Trost.  (Sentencing Tr. at 2, ECF No. 324).  After discussing the guidelines and resolving Movant's objections, the Court determined that Movant's guidelines range was seventy to eighty-seven months and imposed a seventy-month term of imprisonment.  (Id. at 6, 22).  At the conclusion of sentencing, the Court explained as follows –

> You can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there is some other fundamental defect in the proceedings that was not waived by your guilty plea.  You may also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.  However, a defendant may waive those rights as part of a plea agreement and you have entered into a plea agreement which waives some or all of your rights to appeal the sentence itself.  Such waivers are generally enforceable but if you believe the waiver is unenforceable, you can present that theory to an appellate court.  With few exceptions any notice of appeal must be filed within 14 days of judgment being entered in your case.  If you are unable to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis.  If you so request, the clerk of the court will prepare and file a notice of appeal on your behalf.

(Sentencing Tr. at 27-28).  The Court asked Movant if he had any questions about his right to appeal, and Movant stated, "No."  (Id. at 28).

On December 30, 2015, the day after sentencing, Trost sent to Movant a letter that stated –

15

> As I explained to you yesterday, there is an appeal waiver in your plea agreement, precluding an appeal in your case. Furthermore, there are no issues to appeal in any event. Accordingly, I will not be filing a notice of appeal in your case. You indic[a]ted you understood when I explained this to you. . . . Write me after you are transferred so I know where you are located. I wish you success in dealing with your addiction.

(Mov't Ex. 1, ECF No. 377-1).

On December 27, 2016, Movant filed his motion to vacate in which he asserts that Trost's assistance was ineffective because he refused to file an appeal even though Movant instructed him to do so. (Mot. to Vacate at 5; Mem. in Support of Mot. to Vacate at 4).[5]

At the hearing on Movant's motion to vacate, Movant's former counsel, Trost, responded "yes" when asked if he was present at Movant's presentence interview[6] and testified that he sent Movant a copy of the draft PSR rather than meeting with him

_____

[5]Movant also asserts that Trost, in refusing to file an appeal, was ineffective for failing to take into account the government's policy that federal prosecutors should no longer seek an agreement to waive claims of ineffective assistance of counsel. (Mem. in Support of Mot. to Vacate at 5). Movant's plea agreement, however, expressly excepted ineffective assistance claims from the waiver. (Guilty Plea and Plea Agreement at 17). This argument is not further addressed.

[6]Trost used the word "he" in describing the interviewer. (Mot. to Vacate Hr'g Tr. at 13). The line of questioning – on whether Trost was present at Movant's presentence interview – was not continued as it was not relevant to the limited purpose of the hearing. (Id.).

16

because at that point Movant was out of state.  (Mot. to Vacate Hr'g Tr. at 13-14).

Trost testified (1) that, prior to submitting PSR objections, he did not meet with

Movant but reserved the right to supplement objections after meeting with Movant; (2)

that he believed he met with Movant before the sentencing date but could not definitely

remember the time and place, though it "would have probably been at Lovejoy"; and

(3) that he would also have met with Movant prior to sentencing in the Marshal's

lockup.  (Id. at 14-15).  Trost testified that he would have gone over the terms of the

PSR, "explained to him the desire for him to make statement in his behalf[,]" and

"explained to him the fact that we have an appeal waiver and that [absent] some

unusual circumstances, such as the judge going above the guidelines, that there would

not be a basis for an appeal."  (Id. at 15).

Trost testified that he discussed the appeal waiver (including the limited grounds

for appeal) with Movant before he entered into the plea agreement and that it would

have been his practice to again discuss the waiver on the day of the plea.  (Id. at 17-

19).  Trost also testified (1) that it would have been his practice to talk with his client

after sentencing; (2) that he did not recall Movant expressing a concern about his

sentence or an interest in appealing; (3) that he had no recall – "none whatsoever" of

Movant reaching out about an appeal after sentencing; (4) that, consistent with his

17

practice, he sent Movant "a letter confirming the fact that we had discussed the fact that there was no basis for an appeal and that there was an appeal waiver and therefore I was not filing an appeal"; and (5) that "there was no further follow-up that I recall by [Movant] either in writing or phone questioning that." (Id. at 20).

Trost further testified that he had worked as a criminal defense attorney for thirty years and had negotiated roughly 300 plea agreements and sentencings and handled approximately two dozen appeals, that filing an appeal was a simple matter, and that he would file an appeal if a client insisted even if he believed that the appeal had no merit. (Id. at 22-23).

Movant testified that Trost did not go over the appeal waiver with him. (Id. at 31). Movant testified that the PSR interview was done over the phone by a woman while he was in North Carolina (before he was sent to Virginia);[7] that, when he received a copy of the PSR from Trost, he called Trost; that Trost told him that he was in trial but would get with him before sentencing; and that Trost reviewed the PSR with him on the morning of sentencing for approximately twenty minutes. (Id. at 36,

_____

[7]Movant earlier stated – "Defense Council was in Spain and told [Movant] to meet with the probation officer to complete his PSI. The probation officer would call and ask question without defense counsel present." (Mem. in Support of Mot. to Vacate at 5).

18

40, 46).   Movant testified that he talked with Trost in court immediately after sentencing and told Trost that he wanted to appeal but that Trost told him that he did not have any appeal.  (Id. at 31).   Movant testified that he received Trost's letter and that, believing he had no appeal, Movant did not send a reply letter to Trost and, although he attempted to call Trost, it was on another matter.  (Id. at 33-34).   Movant testified that he was aware that an appeal must be filed within fourteen days, that the clerk of court would file it at Movant's request, but that he did not request the clerk to do so because –

> [Trost] says, well, your plea agreement is binding.  You signed a plea agreement precluding for any appeal.  He said, I'm retiring, I'm going to Mexico and then I'm going to Spain.  And I said, well, I'm not happy with my sentence.  And he told me just to suck it up like a man.  I mean I don't know how else to say it.  He said suck it up and that's – so I didn't know what to do.

(Id. at 43-44).   Movant testified that, notwithstanding the Court's instructions that he could file an appeal, he was confused, and that, after he arrived at Butner, he found out that he could appeal certain things.  (Id. at 44-45).   Movant testified that, because he planned on appealing, he had no questions for the Court when the Court told him that he had a right to appeal.  (Id. at 46-47).

19

In his post-hearing brief, Movant argues that Trost provided ineffective assistance by failing to file an appeal as asked by Movant. (Mov't Post Hr'g Br. at 6, 8). Movant asserts that Trost's testimony was based on his practice and habits, not specific memory and that Trost's recollections were inaccurate. Specifically, Movant argues that Trost (1) inaccurately recalled that he was present for Movant's PSR interview by a male interviewer and (2) inaccurately recalled that before sentencing he discussed the PSR with Movant at the detention facility in Lovejoy, Georgia. (Id. at 7-8). Movant argues that this shows that Trost's memory is not sufficiently credible and that Movant's clear recall of his direction to file an appeal should be credited. (Id. at 8). Movant further argues (1) that, even if he did not directly request Trost to file an appeal, Trost's performance was otherwise deficient because Movant expressed an interest in appealing and Trost could not have adequately consulted with Movant in the short time period after sentencing and (2) that Trost's failure to file an appeal was otherwise deficient under Roe v. Flores-Ortega, 528 U.S. 470, 478-80 (2000) (which requires counsel to consult with his client if a rational defendant would want to appeal). (Mov't Post Hr'g Br. at 9-10).

Respondent argues that Movant has not established that he requested Trost to file an appeal, that Trost had no constitutional duty to consult with Movant in regard

20

to an appeal, that Trost did consult with Movant after he was convicted and after he was sentenced, and that Movant ultimately decided not to appeal, which decision was memorialized in a letter. (Resp't Post-Hr'g Resp. at 12). In reply, Movant asserts that the record supports that Movant signaled to Trost that he wanted to file an appeal and that, even if he did not, Trost's failure to file appeal was deficient. (Mov't Post-Hr'g Reply at 2-4).

To show that counsel was ineffective for failing to file a notice of appeal, a defendant must demonstrate that counsel's failure was objectively unreasonable and prejudiced the defendant. Flores-Ortega, 528 U.S. at 476-77. "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Id. at 477. When counsel disregards a client's specific instructions to file an appeal, prejudice is presumed. Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).

Absent a specific request to file an appeal, the question becomes whether counsel consulted, adequately, with his client in regard to filing an appeal. Flores-Ortega, 528 U.S. at 478. "[A]dequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client

21

wishes to pursue an appeal, regardless of the merits of such an appeal." Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007). If counsel has not adequately consulted with his client, the court must determine whether counsel's failure to do so was deficient, i.e., a violation of counsel's "constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480, 484 (stating that, after showing deficiency for failure to consult, the defendant must then show prejudice); see also Devine v. United States, 520 F.3d 1286, 1288 (11th Cir. 2008) (agreeing with district court that a rational defendant would not want to appeal when he has pleaded guilty and entered into an appeal waiver, when there is no suggestion that the guilty plea is invalid, and when he received a legal sentence).

Here, as to credibility generally, Trost's testimony – that he could not definitely remember the time and place of his pre-sentencing meeting with Movant and that it was "probably" at Lovejoy – does not show that Trost inaccurately testified that the meeting occurred at Lovejoy. Trost credibly acknowledges uncertainty as to the exact time and place of the pre-sentence meeting with Movant. As to the PSR interview, the

22

record shows that the PSR was prepared by Barbara L. Oswald and that Movant was arrested while out of state shortly before the PSR was prepared.  Movant also has stated that Trost called him and "told [him] to meet with the probation officer to complete his PSI" without Trost being present, and it is not entirely clear whether the PSR interview was perhaps begun earlier, with Trost and before Movant traveled out of state.  (See Mem. in Support of Mot. to Vacate at 5).  The Court draws no credibility conclusions based on the discrepancy between Movant's statement that Trost was absent for Movant's telephone interview with a female interviewer and Trost's statement that he was present for Movant's PSR interview and his referring to the interviewer as "he."

The Court does, however, find that Movant's credibility is diminished by his changing his story to fit his interest of the moment in regard to his appeal waiver. Movant, at the time that he wanted the Court to accept his guilty plea and wanted to receive the benefits of the plea agreement, stated in his plea agreement and under oath to the Court that Trost reviewed the appeal waiver with him.  (Guilty Plea and Plea Agreement at 19; see Plea Hr'g Tr. at 3, 14-15, 17, 20-21).  Movant, who now wants to disavow his understanding of the appeal waiver, testified during the recent hearing

23

that Trost did not review the appeal waiver with him and has argued the same in his post-hearing brief.  (Mot. to Vacate Hr'g Tr. at 31, 32; Mov't Post Hr'g Br. at 7).

Otherwise, on the issue of filing an appeal, Trost credibly testified based on years of experience and practice that, if a client insisted on filing a meritless appeal, he filed the notice of appeal as required.  Trost credibly testified that, consistent with his practice, he sent Movant a letter that confirmed that he had explained to Movant that he had no basis for an appeal and that Movant had indicated that he understood. The letter so states, and Movant himself testified that, when he received Trost's confirmation letter, he did not pursue the matter.  It is apparent, based on the record before the Court, that Trost advised Movant (based on the appeal waiver and the lack of issues for appeal) that there was no basis for an appeal[8] and that Movant did not actively question that advice until he received different advice at prison.  (See Hr'g Tr. at 31, 33-34, 44-45; Mov't Ex. 1).  In weighing the matters discussed above, the Court does not find Movant's assertion that he requested Trost to file an appeal to be credible.  Movant fails to show that Trost was ineffective for disregarding a specific request to file an appeal.

---

[8]Trost's testimony indicates that his advice, as reflected in his letter, was routine and does not indicate that his advice was in response to any particular request by Movant to file an appeal.

24

As to whether Trost adequately consulted with Movant, adequate consultation requires more than advice that an appeal will not be successful.  See Thompson, 504 F.3d at 1207 ("Simply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense.").  If the Court assumes for the sake of argument that Trost did not adequately consult with Movant in regard to filing an appeal – did not fully discuss the advantages and disadvantages of taking an appeal, the question becomes whether Trost had a duty to consult with Movant either because Movant expressed an interest in appealing or because a rational defendant would have wanted to appeal.  See Devine, 520 F.3d at 1288 (assuming for the sake of argument that counsel did not consult with his client and then asking whether counsel had a duty to do so); Otero v. United States, 499 F.3d 1267, 1270 (11th Cir. 2007) (same).  As discussed below, the undersigned finds that Trost did not have a duty to consult with Movant.

Movant has not convinced the Court by a preponderance of evidence that he expressed an interest in appealing.  Trost's lack of specific recall on the matter provides little information, and, although Movant argues that he expressed an interest in an appeal, based on the record as a whole, the Court does not find the assertion to be credible.  As stated earlier, Movant has shown a willingness to change his testimony

25

according to the need of the moment, which makes him less than credible. Further, Movant's current assertion that immediately after sentencing he was interested in filing an appeal is rendered less credible in light of the fact that Movant acknowledged to the Court that he understood the Court's detailed end-of-sentencing appeal instructions and the fact that, although Movant stated he was subsequently confused, he did not respond to Trost's letter or attempt to call Trost to ask questions regarding an appeal, did not attempt to contact the Clerk of Court in regard to filing an appeal, and did not mention his desire to file an appeal until approximately one year later when he filed his instant motion to vacate. On consideration of the record as a whole, Movant has not credibly convinced the Court by a preponderance of evidence that he expressed an interest in appealing and that, based thereon, Trost had a duty to consult with him.

Movant also fails to demonstrate in his argument on ground two (a) that a rational defendant would have wanted to appeal. (See Mem. in Support of Mot. to Vacate at 4-6; Mov't Post Hr'g Br. at 6-10). Movant pleaded guilty, entered into a valid appeal waiver, received a legal sentence at the low end of the guidelines range, and has raised no remotely meritorious challenge to the validity of his guilty plea. See infra III. D. Movant has not credibly shown by a preponderance of evidence that a rational defendant would have wanted to appeal and that, based thereon, Trost had a

AO 72A
(Rev.8/82)

duty to consult with him.  Movant fails to show that he is entitled to relief on ground two (a).

**C.    Ground Two (b) – Ineffective Assistance of Counsel in Regard to the PSR**

In ground two (b), Movant states that Trost told him to meet with the probation officer to complete the PSR and that the probation officer "would call and ask question[s] without defense counsel present"; that there were many (unspecified) errors in the PSR to which Trost failed to object; and that he believes he would have received a shorter sentence had Trost objected to those errors.  (Mot. to Vacate at 6; Mem. in Support of Mot. to Vacate at 5).

Respondent argues that the majority view is that no Sixth Amendment right to counsel attaches to presentence interviews in non-capital cases and that Movant does not show that he was prejudiced by Trost's absence.  (Resp't Resp. at 17).

One must have a constitutional right to counsel to obtain relief for ineffective assistance of counsel.  Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (per curium) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel . . . .").  The undersigned is aware of no binding precedent which holds that a defendant has a right to counsel during a presentence

27

interview.  See United States v. Simpson, 904 F.2d 607, 611 (11th Cir. 1990) (finding that the issue was waived but noting that three circuits, at the time, had found that "a presentence interview by a probation officer is not a critical stage of the criminal proceedings at which the Sixth Amendment ensures representation"); see also United States v. Washington, 11 F.3d 1510, 1517 (10th Cir.1993) ("[D]efendant had no Sixth Amendment right to the presence or advice of counsel during his presentence interview."); United States v. Gordon, 4 F.3d 1567, 1572 (10th Cir. 1993) ("Given that Defendant had no Sixth Amendment right to the presence or advice of counsel during the presentence interview, he cannot obtain relief for original counsel's failure to inform him of his Fifth Amendment right to refuse to answer the probation officer's presentence interview questions."); United States v. Hicks, 948 F.2d 877, 885 (4th Cir.1991) ("There is no such right (to counsel) at a routine presentence interview because the presentence interview is not a critical stage of the criminal proceedings."); United States v. Jackson, 886 F.2d 838, 843-45 (7th Cir.1989) ("We conclude that the sixth amendment right to assistance of counsel did not extend to Jackson's presentence interview by the federal probation officer."); Brown v. Butler, 811 F.2d 938, 940-41 (5th Cir.1987) ("Brown was interviewed by a probation officer, who is an arm of the court charged with assisting the court in arriving at a fair sentence.  We conclude that

28

such an interview is not a critical stage of the proceeding in which counsel's presence or advice is necessary to protect the defendant's right to a fair trial."); Baumann v. United States, 692 F.2d 565, 577-78 (9th Cir.1982) ("We hold that a routine presentence interview of an individual convicted of a noncapital federal offense is not . . . a critical stage of the proceeding in which counsel's presence, or advice, is necessary to protect the defendant's right to a fair trial."). Otherwise, as to counsel's representation in regard to filing objections to the PSR, the standard in Strickland, discussed earlier, applies.

Based on the above, Movant fails to show that he was deprived of his constitutional right to effective assistance of counsel for his presentence interview. Further, Movant's conclusory assertion in ground two (b) of errors in the PSR is insufficient to show prejudice or to demonstrate that Trost was ineffective in regard to filing objections to the PSR.[9]

---

[9]Movant, however, in his amended reply on ground three has raised two ineffective assistance claims that relate to Trost's objections to the PSR. Those claims, which arguably relate back to Movant's assertion in ground two (b) that Trost was ineffective in objecting to the PSR, are addressed below in ground three.

29

### D.   **Ground Two (c) – Ineffective Assistance of Counsel in Regard to Drug Quantity**

The guilty plea and plea agreement contained, *inter alia*, the following: (1) Movant and the government agreed that the drug quantity reasonably foreseeable to Movant was the equivalent of 3,400 KG of marijuana; (2) the government agreed not to bring any further criminal charges against Movant related to the charge to which he was pleading guilty; (3) the government agreed to recommend an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1 provided Movant, among other things, did not engage in further criminal activity; (4) the government agreed to recommend a two-level decrease under U.S.S.G. §§ 2D1.1(b)(16) and 5C1.2 (a safety-valve decrease) if Movant met the criteria; and (5) the parties agreed to recommend a one-level downward variance based on judicial economy.   (Guilty Plea and Plea Agreement ¶¶ 11, 13-15, 22).   Plaintiff signed the plea agreement, (id. at 18), and additionally signed the following –

> I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney.  I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. . . . No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my

permission.  I am fully satisfied with the representation provided to me by my attorney in this case.

(Id. at 19).

At the plea hearing, under oath, Movant informed the Court that he had read the plea agreement and gone over it with Trost, confirmed that he had signed the agreement and the attached statement, and informed the Court that he was entering into the plea freely and voluntarily.  (Plea Hr'g Tr. at 3, 9).  The government reviewed the terms of the plea agreement – including the term that the parties agreed that the drug quantity reasonably foreseeable to Movant was the equivalent of 3,400 KG of marijuana.  (Id. at 11).  Movant informed the Court that he agreed with the government's description of the plea agreement. (Id. at 15).  The Court asked Movant if he had received sufficient time to think about and discuss the matter fully with Trost, and Movant responded, "Yes, your Honor."  (Id. at 17).  The Court asked Movant if he was satisfied with Trost's representation, and Movant responded, "Yes, your Honor."  (Id.).  The Court asked Movant if he needed clarification on any question asked by the Court, and Movant stated, "No, Sir."  (Id. at 27).  The Court accepted Movant's guilty plea and plea agreement.  (Id. at 28).

The PSR recommended a thirty-two base offense level, based on the agreed upon 3,400 KG drug equivalency; a two-level safety-valve decrease, as agreed by the government; and, based on Movant's post-plea criminal activity, did not recommend any reduction for acceptance of responsibility, for an adjusted offense level of thirty. (PSR ¶¶ 66, 67, 69, 71).  At sentencing, the Court accepted the recommended safety-valve decrease, granted the government's motion for a one-level reduction/variance for judicial economy based on the plea agreement, and granted a two-level decrease for acceptance of responsibility, for an offense level of twenty-nine and a guidelines range of seventy to eighty-seven months.   (Sentencing Tr. at 2-3, 6).   The following exchange occurred between the Court and Trost –

> The Court:  Let me ask you one question while you are standing there.  One of the things that caught my attention is that he is supposed to have gotten like 3400 kilograms, which would be equivalent to 3400 kilograms of marijuana in these pills.

> Mr. Trost: Judge, . . . they attributed what these other eight people or ten people, whatever, yeah.  And, judge, you know, if push comes to shove, I would have contested that, but like in any compromise, I sucked it up and took the medicine and accepted the fact that we can't win them all.  The government backed off on some things.  So I don't know if that's responsive to the Court's question, but I think, I think, frankly, it was a little excessive and I'm not sure if it was justified, but I think most of it was because the government held him accountable for not only the pills he got but the pills that he helped facilitate for these other people, so I –

32

The Court:  Well, I've got to be honest with you.  That's a consideration I'm taking in [] sentencing, so I don't want to mislead you.

Mr. Trost:  No.  I understand that, judge, and I'm trying to answer the Court's question.  That's how they came up with it.  Whether that's a good theory or bad theory, that's up to the Court.  We accepted that. We accepted that.  And I think there's counterarguments, but given the fact that we were trying to reach a compromise that we could all live with, I accepted it, but that's my response.

The Court: okay.

(Sentencing Tr. at 20-21).  The Court imposed a seventy-month term of imprisonment, at the low end of the guidelines range.  (Id. at 22).

In ground two (c), Movant asserts that Trost was ineffective for failing to object to drug quantity and for advising Movant to accept an inflated drug quantity and asserts that he would not have accepted the guilty plea if he had known the drug quantity for which he would be held responsible.  (Mot. to Vacate at 6; Mem. in Support of Mot. to Vacate at 6).

Respondent argues, among other things, that Movant unequivocally stipulated to a drug quantity equivalent of 3,400 KB of marijuana.  (Resp't Resp. at 17).  In reply, Movant argues that Trost's statements at sentencing (quoted above)  demonstrate that he was ineffective and asserts that Trost should have objected at the plea hearing "to what he knew was a major mis-calculation."  (Mov't Am. Reply at 12-13).

33

The <u>Strickland</u> standard again applies.  It is apparent that Movant, at the time he entered into his guilty plea, knew the drug quantity – the equivalent of 3,400 KB of marijuana – for which he would be held responsible.  Accordingly, Movant fails to show that his guilty plea was unknowing or involuntary based on his allegedly not knowing that he would be held responsible for such amount.  Based on Movant's stated desire to plead guilty, Trost was reasonable in not objecting to the drug quantity during the plea hearing.  Further, based on Movant's guilty plea, Trost was reasonable in not objecting at sentencing to the drug quantity.

To the extent that Movant asserts that Trost was ineffective for advising him, during plea proceedings, to accept the equivalent of 3,400 KB of marijuana as the drug quantity, he fails to show that he was prejudiced.  Movant does not show that, had Trost advised him not to accept that drug quantity, there is a reasonable probability of a different or more favorable outcome.  Movant does not show that the government would have been willing to enter into any other plea agreement, and Movant nowhere indicates that he would have wanted to proceed to trial, where he would have faced a potential conviction and sentencing without the benefits of the plea agreement.

**E.      Ground Three – an Illegal Sentence**

As discussed earlier, the government agreed to recommend an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, with the caveat that it would not be required to do so if Movant engaged in further criminal activity.  (Guilty Plea and Plea Agreement ¶ 14).  The government also conditionally agreed that, if it determined that Movant's cooperation qualified as substantial assistance, it would recommend a downward departure under U.S.S.G. § 5K1.1.[10]  (Guilty Plea and Plea Agreement ¶ 21).  The parties further agreed as follows –

> [Movant] understands that the determination as to whether [Movant] has provided 'substantial assistance' rests solely with the Government. . . . If [Movant] fails to cooperate truthfully and completely, or if [Movant] engages in additional criminal conduct inconsistent with cooperation, [Movant] will not be entitled to any consideration whatsoever pursuant to this paragraph.

(Id.).  At the May 14, 2015, plea hearing, the government reviewed the plea agreement and stated that the government would not be required to recommend acceptance of responsibility if Movant engaged in any conduct inconsistent with accepting responsibility and that the government alone would make the recommendation about

---

[10]Section 5K1.1 states that the court may depart from the guidelines if the government files a motion stating that the defendant has provided substantial assistance.

what, if any, credit Movant should receive for substantial assistance.  (Plea Hr'g Tr. at 11, 13).  Movant agreed that the government's description of the plea agreement was correct.  (Id. at 15).

As stated earlier, the PSR recommended that, based on Movant's post-plea criminal activity – which indicated that Movant had not withdrawn from criminal conduct, Movant receive no reduction based on acceptance of responsibility.  (PSR ¶ 73).  Trost objected to the PSR's withholding of a three-level reduction for acceptance or responsibility and argued that, although the Court could deny the reduction, the Court should not in light of Movant's underlying addiction.  (Id., Letter of Nov. 24, 2015).  At sentencing, the government stated that it stood with the position in the PSR and argued that Movant's conduct was inconsistent with acceptance of responsibility. (Sentencing Tr. at 6).  The Court determined that Movant should not receive a three-level reduction for acceptance of responsibility but granted a two-level reduction. (Id.). The government informed the Court at sentencing that Movant had cooperated but that because of Movant's post-plea criminal conduct the government was not filing a motion based on substantial assistance.  (Id. at 11).

In ground three, Movant asserts that his sentence is illegal because he should have received a three-level reduction for acceptance of responsibility under § 3E1.1,

36

a minimal role reduction under § 3B1.2, and a two-level safety-valve decrease[11] and

because the government (per an immunity deal) should have filed a § 5K1.1 motion

for a downward departure based on substantial assistance.  (Mot. to Vacate at 8; Mem.

in Support of Mot. to Vacate at 6-7).

      Respondent argues that Movant's substantial-assistance claim is procedurally

defaulted and without merit and does not address the remainder of ground three.

(Resp't Resp. at 23-25).   In reply, Movant additionally asserts that Trost was

ineffective (1) for failing to argue under United States v. McPhee, 108 F.3d 287, 288

(11th Cir. 1997), abrogated in part as stated by United States v. Pruitt, 344 F. App'x

532, 539 (11th Cir. 2009), that he should have received a three-level reduction for

acceptance of responsibility and (2) for failing to address the government's failure to

file a motion for a downward departure based on substantial assistance.  (Mov't Reply

at 16-17).

---

[11]Movant did receive a safety-valve decrease, and his argument to the contrary is without merit.  See supra III. D.; (Sentencing Tr. at 2-3).

AO 72A
(Rev.8/82)

1.   **Waiver of Review for Sentencing Claims**

A provision that waives the right to review is valid and enforceable if the district court has "specifically questioned the defendant about the provision during the plea colloquy, or . . . it is manifestly clear from the record that the defendant fully understood the significance of the waiver." United States v. Hardman, 778 F.3d 896, 899 (11th Cir. 2014) (quoting United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001)) (internal quotation marks omitted).

Here, the waiver was throughly reviewed during the plea hearing, both as to the waiver of direct and collateral review, and the Court questioned Movant regarding the waiver and ascertained that he understood the waiver. See III. B.  The undersigned finds that Movant's waiver of his right to collateral review is valid and enforceable and that Movant has waived the right to collaterally challenge his sentence.

Further, Movant did not challenge the legality of his sentence by filing a direct appeal and presenting an argument to the Eleventh Circuit Court of Appeals as to why a challenge should be considered in light of his appeal waiver.  Movant's challenge to the legality of his sentence cannot be raised for the first time in a motion to vacate. See Crawford v. United States, 501 F. App'x 943, 945 (11th Cir. 2012) (finding that appeal waiver barred postconviction challenge to sentence and additionally finding,

38

"Crawford is procedurally barred from challenging the miscalculation of his sentence for the first time in a motion to vacate").

### 2.   Ineffective Assistance of Counsel on Two Sentencing Claims

As to Movant's two, related ineffective assistance claims (raised in Movant's amended reply), Strickland applies. The guidelines allow credit for acceptance of responsibility as follows –

(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater,[12] and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1.  Appropriate considerations for applying subsection (a) include whether the defendant has voluntarily terminated/withdrawn from criminal conduct. U.S.S.G. § 3E1.1, Application Note 1.(B).  If a defendant qualifies under subsection (a), qualification under subsection (b) turns on the government filing a motion stating

---

[12]Movant's offense level was 16 or greater and this requirement is not further discussed.

that the defendant has "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty[.]"  U.S.S.G. § 3E1.1(b).

> Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing. . . . The government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal.

U.S.S.G. § 3E1.1, Application Note 6; Pruitt, 344 F. App'x at 538-39 ("The guidelines commentary specifies that 'an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing.'" (citation omitted)).  A third-point reduction under § 3E1.1 cannot be "withheld for reasons unrelated to the timeliness of the cooperation."  McPhee, 108 F.3d at 289-90. However, § 3E1.1(b) was amended in 2003 to require that the government must file a motion before the additional third-point can be applied, and absent a government motion, there is no error in the court not awarding the additional point.  Pruitt, 344 F. App'x at 539.

Movant's claim that Trost was ineffective for failing to argue under McPhee that he should have received a three-level reduction for acceptance of responsibility fails.

40

Movant agreed in his plea agreement that the government would not be required to recommend acceptance of responsibility if he engaged in additional criminal conduct. Movant engaged in additional criminal conduct, and the government plainly stated that based thereon it would not seek any acceptance of responsibility credit for Movant. Trost nonetheless argued to the Court that it should consider giving Movant a reduction for acceptance of responsibility in light of his problems with addiction, and the Court allowed a two-level reduction.  Only the government could file a motion for the additional third-point reduction, and the Court finds no deficiency in Trost's representation on this matter.

Movant's claim that Trost provided ineffective assistance by failing to address the government's failure to file a motion for a downward departure based on substantial assistance also fails.  In light of Movant's agreement with the government that if he engaged in additional criminal conduct he would be entitled to no consideration whatsoever for substantial assistance and the government's statement to the Court at sentencing, Movant fails to show what if anything Trost could have done that would have had a reasonable probability of changing the government's decision.

41

## IV.   Certificate of Appealability (COA)

Under Rule 11 of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Melton v. Sec'y, Fla. Dep't of Corr., 778 F.3d 1234, 1236 (11th Cir.) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

The undersigned recommends that a COA should be denied because it is not reasonably debatable that Movant has failed to carry his burden of demonstrating that he is entitled to collateral relief. If the Court adopts this recommendation and denies a COA, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

**V.**     <u>**Conclusion**</u>

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion [308] to vacate, set aside, or correct his federal sentence be **DENIED** and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 16th day of October, 2018.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

43